UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES E. JEFFERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-90-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12 and 13]. Plaintiff James E. Jeffers seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff James E. Jeffers, filed his application for a period of disability and disability insurance benefits under the Social Security Act on May 14, 2010, alleging disability since November 3, 2009, due to pain in his neck, back, and right shoulder. His application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held before ALJ Robert L. Erwin, in Knoxville, Tennessee, on August 29, 2011. Mr. Jeffers was present and testified. The ALJ issued an unfavorable decision on October 21, 2011, finding the claimant capable of light exertion.

The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since November 3, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: neck, back and right shoulder pain (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is able to perform frequent climbing; occasional ladder climbing, frequent balancing, occasional bending, squatting and kneeling; occasional repetitive overhead reaching; no sustained bending, can use right and left arms for simple grasping, use feet for sitting, standing and walking 20 to 40 minutes and stand/walk 60 minutes.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on August 22, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 3, 2009, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 16-21].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or

3

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Walters*, 127 F.3d at

4

529. The burden shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is

6

harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

Plaintiff raises three allegations of errors. First, plaintiff asserts that the ALJ failed to properly weigh and give "good reasons" for discounting the opinion of plaintiff's treating physician Tim Smith, M.D [Doc. 11 at 12]. As a result, plaintiff argues that the ALJ failed to properly weigh an Independent Vocational Evaluation completed by vocational expert ("VE") A. Bentley Hankins, M.S., who based his evaluation in part on Dr. Smith's physical assessment of plaintiff [*Id.* at 15]. In addition, plaintiff argues that the ALJ erroneously relied on testimony from VE Julian Nadolsky, Ed.D., during the hearing because the ALJ failed to ask Dr. Nadolsky whether his testimony conflicted with information provided in the Dictionary of Occupational Titles ("DOT") [*Id.* at 17].

The Commissioner contends that the evidence within the record does not support Dr. Smith's physical assessment of plaintiff, and thus the ALJ properly weighed Dr. Smith's opinion [Doc. 13 at 3]. The Commissioner subsequently argues that because Dr. Smith's opinion was properly weighed and because Mr. Hankins is not an acceptable medical source, Mr. Hankins's opinion was likewise entitled to little weight [*Id.* at 8].

7

Lastly, the Commissioner asserts that the ALJ properly relied on Dr. Nadolsky's testimony because his testimony did not conflict with the DOT [*Id.* at 10]. In the alternative, the Commissioner contends that even assuming *arguendo* that the ALJ erred in this last respect, the error was harmless [*Id.* at 11-12].

Plaintiff filed a reply, arguing that as to the first issue, the "Commissioner never cites anything in the ALJ's decision that shows how the ALJ analyzed the treating physician's opinion as required by the regulations" [Doc. 14 at 2]. In regards to the second issue, plaintiff clarified that he is not arguing that Mr. Hankins's opinion should be considered "medical evidence;" rather, plaintiff argues that if Dr. Smith's opinion had been properly weighed, Dr. Hankins's opinion would have been consistent with and supported by other evidence in the record, namely part of Dr. Nadolsky's testimony provided during the hearing [*Id.* at 3-4].

## V. ANALYSIS

The Court will address plaintiff's allegations of error in turn.

### A. Treating Physician Tim Smith, M.D.

Plaintiff argues that the ALJ failed to properly weigh the opinion of plaintiff's treating physician Dr. Smith as required by 20 C.F.R. § 404.1527(c). Plaintiff asserts that the ALJ summarily rejected Dr. Smith's opinion and instead accorded great weight to the opinion of a non-treating, non-examining state agency physician without providing "good reasons" as required by the regulations.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight afforded to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

9

Here, the ALJ described the weight accorded to Dr. Smith's opinion, stating:

> On July 19, 2011 Dr. Tim Smith opined that the claimant retained the ability to perform less than sedentary exertional level of work (Exhibit 16F). Social Security Ruling 96-2p permits controlling weight to be given to a claimant's treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence, and relevant case law holds that the opinion of a treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence. As the opinion of Dr. Smith is not well supported nor is it consistent with the evidence of record, little weight is accordingly given to the assessment of this treating physician.

[Tr. 19].

The Court finds the ALJ's discussion of Dr. Smith's opinion is simply a conclusory statement/opinion without any basis being stated or any reasons to support it and thus it is inadequate to meet the "good reasons" requirement. The ALJ's brief discussion of Dr. Smith's opinion does not give the Court any indication that the ALJ weighed "the length or the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole and the specialization of the treating source." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2)-(6). While it is clear that the ALJ accorded little weight to Dr. Smith's opinion, it is unclear the reasons for that weight.

10

Initially, the ALJ's reference to Dr. Smith's July 2011 assessment[1] is without discussion of the restrictions placed upon plaintiff or an evaluation of those restrictions. Further, the ALJ fails to discuss the treating relationship between Dr. Smith and plaintiff despite the record indicating that Dr. Smith has been treating plaintiff since at least 2002, and has regularly seen plaintiff since his alleged onset date [Tr. 173-277, 361-68, 479-502]. Although the Commissioner cites the Court to numerous treatment notes authored by Dr. Smith, as well as other medical sources, that the Commissioner argues supports a finding that the ALJ properly applied the treating physician rule, the Commissioner fails to demonstrate how the ALJ's own discussion, as opposed to the record itself, supports a finding that the ALJ properly weighed and gave "good reason" for rejecting Dr. Smith's opinion.

In addition, the medical evidence discussed by the ALJ only confirms that plaintiff suffered from lower back problems which were further aggravated by his October 2009 work-related injury. In other words, the discussed medical evidence fails to demonstrate

---

[1] The July 19, 2011 opinion that the ALJ refers to is a form completed by Dr. Smith entitled Medical Assessment of Ability to Do Work-Related Activities (Physical) in which Dr. Smith responded to a variety of short-answer and multiple choice questions [Tr. 399-403]. Therein, Dr. Smith opined plaintiff could lift, carry, pull, and push less than four pounds occasionally and less than two pounds frequently [Tr. 400]. During an 8-hour workday, plaintiff could sit and stand for less than three hours, occasionally climb and balance, but never crouch, kneel, or crawl [Tr. 401]. Dr. Smith further opined that sensation and pain in plaintiff's hands affected his ability to reach, handle, feel, push, or pull [Tr. 402]. Lastly, due to plaintiff's neck and back pain, Dr. Smith placed environmental restrictions on plaintiff that included heights, moving machinery, and vibrations [Tr. 402-03]. Dr. Smith opined that his overall physical assessment of plaintiff was based upon plaintiff's degenerative disk disease and cervical fusion in his lumbar spine [Tr. 400-03].

11

how it discredits or conflicts with Dr. Smith's opinion in such a way that makes clear to any subsequent reviewer the reasons for the weight accorded to Dr. Smith's opinion.

For example, the ALJ discussed the treatment notes of examining physicians James A. Killeffer, M.D., and William E. Kennedy, M.D., and non-examining, non-treating state agency physician Marvin H. Cohn, M.D. Dr. Killeffer is a neurosurgeon who examined and evaluated plaintiff's back and leg pain between April and June 2010, after plaintiff underwent an MRI on his lumbar spine [Tr. 18, 369-72, 383-84]. The ALJ addressed Dr. Killeffer's initial evaluation of plaintiff conducted on April 6, 2010, in which Dr. Killeffer opined that plaintiff's October 2009 work-related injury had aggravated his pre-existing lower back problems at L5-S1 [Tr. 18]. Dr. Killeffer recommended that plaintiff attempt conservative treatment such as physical therapy and anti-inflammatory medications because surgical intervention would likely require a L4-S1 fusion [*Id.*]. When plaintiff reported the following month that physical therapy was unsuccessful, Dr. Killeffer opined that plaintiff was at his maximum medical improvement ("MMI") [*Id.*]. The ALJ also addressed plaintiff's June 22, 2010 visit with Dr. Killeffer, in which pPlaintiff reported continued pain in his lower back and discomfort in his leg [*Id.*]. Dr. Killeffer again opined that plaintiff's functional decline was permanent and that he had reached his MMI [*Id.*]. Dr. Killeffer noted that it would probably be prohibitively difficult for plaintiff to work a heavy labor job, but that a functional capacity evaluation ("FCE") would have to be performed before permanent

12

work restrictions could be placed upon plaintiff [*Id.*]. The ALJ noted that no records were provided by Dr. Killeffer as to a FCE [*Id.*].

The ALJ also discussed the January 24, 2011 examination conducted by Dr. Kennedy, an orthopedic surgeon and independent medical examiner, regarding plaintiff's October 2009 work-related back injury [Tr. 18, 415]. The ALJ's discussion summarized Dr. Kennedy's findings as follows: plaintiff suffered from "1) Lumbar spine sprain; 2) Multiple level degenerative disc disease of the lumbar spine with degenerative retrolisthesis at L5; and 3) Herniated discs at levels L4 and L5 of 1991" [Tr. 18]. In sum, the ALJ stated that Dr. Kennedy had concluded that plaintiff's "work-related incident caused the lumbar spine sprain and permanently aggravated and advanced the preexisting, underlying multiple level degenerative disc disease" [*Id.*].

Finally, the ALJ addressed the opinion of state agency physician Dr. Cohn [Tr. 20]. On July 31, 2010, Dr. Cohn completed a form entitled "Physical Residual Functional Capacity Assessment," in which he responded to a variety of short-answer and multiple-choice questions [Tr. 385-93]. The ALJ summarized Dr. Cohn's findings, stating that plaintiff "retained the ability to lift and carry no more than fifty pounds occasionally, twenty-five pounds frequently, sit, stand, and walk six hours out of an eight-hour workday; occasionally climb ladders, ropes, and scaffolds" [Tr. 20]. The ALJ concluded that Dr. Cohn's opinion was well supported and consistent with the record, and thus, entitled to great weight [*Id.*].

Based upon the foregoing medical evidence discussed by the ALJ, it is simply unclear to the Court the reasons for, or how the ALJ arrived at his conclusion that Dr. Smith's opinion "is not well supported nor is it consistent with the evidence of record" [Tr. 19].

Accordingly, when the ALJ fails to "comprehensively set forth the reasons for the weight assigned to a treating physician's opinion," the Court may remand the case. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545)). A remand, however, is unnecessary if the violation of the "good reasons" requirement is deemed harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). A violation of the "good reason" requirement is harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation."

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted).

The Court finds that none of the exceptions apply to the case here. Upon review of the record, the Court finds that Dr. Smith's opinion was not so patently deficient that it could not possibly be credited. The Court further finds that the ALJ did not adopt Dr. Smith's opinion. Lastly, the Court finds that the goal of §1527(c)(2) was not met. The ALJ's discussion of other medical evidence cannot be said to have indirectly attacked the consistency or supportability of Dr. Smith's opinion. *See Nelson v. Comm'r of Soc. Sec.*,

14

195 F. App'x 462, 472 (6th Cir. 2006) (holding that the ALJ's discussion of other record evidence of the claimant's mental impairments indirectly attacked the consistency and supportability of the treating physician's opinion and therefore met the goal of § 1527(c)(2)).

Accordingly, the case will be remanded to the ALJ for clarification of the weight accorded to the opinion of plaintiff's treating physician, Dr. Smith, and the reasons for according such weight.

### B. Vocational Expert A. Bentley Hankins, M.S.

Plaintiff also challenges the weight accorded to an Independent Vocational Evaluation conducted by vocational expert Mr. Hankins [Doc. 11 at 15].

Mr. Hankins first performed an evaluation on plaintiff on February 18, 2011 [Tr. 455-78]. The evaluation was subsequently updated with a supplemental report dated August 23, 2011 [Tr. 503-21]. In the supplemental report, Mr. Hankins opined that "based upon the functional limitations identified by Dr. Smith, Mr. Jeffers would be functioning at less than a full range of sedentary exertion and would not retain the ability to engage in substantial gainful activity" [Tr. 520]. The ALJ found that because "[t]he opinion of Mr. Hankins is considered with the opinion of Dr. Smith, which is not well-supported nor is it consistent with the evidence of record, little weight is accordingly given to the assessment that the claimant would not be employable for work as it is generally performed in competitive work settings in the regional and national economy" [Tr. 20]. Plaintiff argues that Mr. Hankins's opinion should have received greater weight

15

because had Dr. Smith's opinion been properly weighed by the ALJ, Mr. Hankins's opinion would have been consistent with and supported by other evidence in the record, namely testimony provided by vocational expert Dr. Nadolsky during the hearing [Doc. 11 at 16, Doc. 14 at 3-4].

At this juncture, the Court need not determine if the ALJ erred in his treatment of the VE's opinion. The Court finds that upon remand, the ALJ shall reevaluate and address the extent to which Mr. Hankins's opinion is or is not consistent with and supported by the evidence of record in light of the ALJ's explanation for the weight accorded to Dr. Smith. In addition, because part of plaintiff's argument involves the testimony provided during the hearing by Dr. Nadolsky, the ALJ will have the option of acquiring additional VE testimony as appropriate.

### C. Vocational Expert Julian Nadolsky, Ed.D.

Finally, plaintiff contends that during the hearing, the ALJ erred in failing to ask vocational expert Dr. Nadolsky whether his testimony conflicted with the DOT [Doc. 11 at 17].

During the hearing, the ALJ framed a hypothetical question to Dr. Nadolsky based upon a FCE completed by Physiotherapy Associates on June 7, 2010 [Tr. 49-50, 373-82]. The FCE, as well as the hypothetical, included a sit/stand limitation [*Id.*]. After describing plaintiff's proposed limitations to Dr. Nadolsky, the ALJ asked whether plaintiff would be capable of performing his past relevant work, and if not, whether there were other jobs in the regional and national economy that plaintiff could perform [Tr. 49-

16

50]. Dr. Nadolsky responded that plaintiff "would not be able to return to any of his prior jobs," but would be capable of light work "and be limited even in the light level" [Tr. 50]. Dr. Nadolsky further opined that under the hypothetical, the Plaintiff would be capable of performing unskilled jobs that allowed him to alternate between siting and standing [Tr. 50-51]. Dr. Nadolsky provided several examples of occupations in the national and regional economy that the Plaintiff would be capable of performing with such limitations [Tr. 51]. A careful reading of the hearing transcript reveals that neither the ALJ nor Plaintiff's counsel asked Dr. Nadolsky whether his testimony as it relates to the above hypothetical question conflicted with the DOT [Tr. 47-52].

The Plaintiff contends that the DOT does not contain any information about jobs that include a sit/stand option, and that such limitation affects a claimant's ability to perform a full range of work [Doc. 11 at 17.]. Under Social Security Ruling 00-4p, the Plaintiff argues that the ALJ had an affirmative responsibility to ask Dr. Nadolsky whether his testimony conflicted with the DOT [*Id.*]. Because the ALJ did not ask Dr. Nadolsky whether his testimony was consistent with the DOT, plaintiff argues that the ALJ improperly relied on the response to support his finding that there are other jobs in the national and regional economy plaintiff was capable of performing [*Id.*].

The Commissioner argues that the sit/stand option does not conflict with the DOT, pointing to a string of case law to support the contention [Doc. 13 at 10-11]. Because no conflict existed, the Commissioner asserts that no explanation was required by Dr. Nadolsky before the ALJ was permitted to rely on the VE evidence [*Id.* at 11].

17

Furthermore, the Commissioner contends that assuming *arguendo* that the ALJ erred in failing to ask Dr. Nadolsky whether his testimony conflicted with the DOT, the error was harmless.

Social Security Ruling 00-4p, 2000 WL 1898704 at *4 (2004), in pertinent part, provides the following:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

The ruling further provides that if a conflict exists, the ALJ must resolve the conflict before the ALJ can rely on the VE evidence. *Id.*

The Court first notes that "[t]he DOT is somewhat limited in that it classifies jobs in terms of skill and exertional (strength) demands [and] does not address nonexertional limitations, such as a need for a sit/stand option." *Patterson v. Comm'r of Soc. Sec.*, No. 1:09-cv-413, 2010 WL 774678, at *3 (W.D. Mich. Mar. 1, 2010). Moreover, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *3. Therefore, a VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* As a result, a VE is permitted

18

to rely on sources other than the DOT in evaluating a hypothetical. *See* 20 C.F.R. § 404.1566(d).

Case law further demonstrates that a sit/stand option has been held not to conflict with the DOT. *See Fitzgerald v. Astrue*, 3:10-1222, 2012 WL 6676446, at *16 (M.D. Tenn. Dec. 21, 2012) *adopted by* 2013 WL 265233 (M.D. Tenn. Jan. 22, 2013) (holding "it is well-established that a VE's testimony that an individual can perform work with a sit/stand option does not conflict with the DOT.") (citing *Baranich v. Barnhart*, 128 F. App'x 481, 487 n.3 (6th Cir. 2005)); *Fletcher v. Astrue*, 4:10-CV-33, 2011 WL 2222058, at *4 (E.D. Tenn. May 13, 2011) *adopted by* 2011 WL 2183551 (E.D. Tenn. June 6, 2011) (holding that a sit/stand option is not inconsistent with the DOT and therefore the VE was not required to explain any conflict).

In the instant case, the Court finds that there is no conflict between Dr. Nadolsky's testimony and the DOT, and thus, no further explanation was needed from Dr. Nadolsky before the ALJ was permitted to rely on the VE evidence. Alternatively, to the extent that the ALJ was obligated to ask Dr. Nadolsky whether his testimony conflicted with the DOT, the Court finds that plaintiff has not demonstrated that he "has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapse[]." *Wilson*, 378 F.3d at 546-47. Therefore, the ALJ's error was harmless.

Accordingly, the Plaintiff's allegation of error in this regard is not-well taken.

19

Case 3:13-cv-00090-TAV-CCS   Document 15   Filed 02/20/14   Page 19 of 20   PageID #: 630

## VI. CONCLUSION

Based upon the foregoing, plaintiff's Motion for Summary Judgment [Doc. 10] is hereby **GRANTED IN PART** and **DENIED IN PART** and the Commissioner's Motion for Summary Judgment [Doc. 12] is **GRANTED IN PART** and **DENIED IN PART**. It is **ORDERED** that this case be **REMANDED** to the ALJ to: (1) explain the weight accorded to the opinion of plaintiff's treating physician, Dr. Smith, and the reasons for according such weight, and (2) reevaluate whether Mr. Hankins's August 23, 2011 opinion is consistent with and supported by the evidence of record in light of the ALJ's explanation for the weight accorded to Dr. Smith.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE